UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Walt Thompson and Kristine Thompson, Plaintiffs, v. Brasscraft Manufacturing Company, Defendant. | Case No. 20-cv-01417 (SRN/LIB) **ORDER** |

Mark J. Peschel, Eastlund Hutchinson Ltd., 4200 County Road 42 West, Savage, MN 55378-4048, for Plaintiffs.

Christopher W. Fowlkes and Matthew Joseph Merz Smaron, Bowman and Brooke LLP, 150 South Fifth Street, Suite 3000, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Summary Judgment [Doc. No. 20] filed by Defendant Brasscraft Manufacturing Company ("Brasscraft"). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motion.

**I.     BACKGROUND**

The facts of this case are straightforward and undisputed. Brasscraft manufactures water supply lines, which connect household toilets to a water source. During construction of Plaintiffs' house, Plaintiff Walt Thompson, a licensed plumber, installed a water supply

1

line manufactured by Brasscraft in one of the Thompsons' three bathrooms.[1] (Decl. of Walt Thompson ("Thompson Decl.") [Doc. No. 29], at ¶¶ 2-3.) The installation process required only a wrench and Thompson's hands, and took no more than five minutes. (*Id.* ¶ 5.) Construction of the Thompsons' house was completed in 2003; fifteen years later, a plastic coupling nut on the water supply line failed, causing significant water damage. (*Id.* ¶ 2.)

The Thompsons filed this lawsuit, asserting negligence, products liability, and breach of warranty claims against Brasscraft. (Compl. [Doc. No. 1-1].) Brasscraft now moves for summary judgment, asserting that the statute of repose in Minnesota Statutes § 541.051 bars the Thompsons' claims.

**II.   DISCUSSION**

**A.   Standard of Review**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). And a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the

---

[1] Thompson purchased the supply line from Menards, and the toilet from Goodin Company. (Thompson Decl. ¶ 4.)

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the party opposing summary judgment may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Where, as here, the Court sits in diversity, the Court must apply Minnesota law. In resolving substantive issues of state law, the Court is bound by the holdings of the Minnesota Supreme Court. *Integrity Floorcovering, Inc. v. Broan-Nutone, LLC*, 521 F.3d 914, 917 (8th Cir. 2008). "If the Minnesota Supreme Court has not spoken on a particular issue," the Court "must attempt to predict how the Minnesota Supreme Court would decide [that] issue and 'may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data.'" *Id.* (citation omitted).

### B.   Analysis

Under Minnesota Statutes § 541.051, "no action by any person in contract, tort, or otherwise to recover damages for any injury to property . . . arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any

3

person . . . furnishing the . . . materials . . . of the improvement to real property . . . more than two years after the cause of action accrues, . . . nor in any event shall such a cause of action accrue more than ten years after substantial completion of the construction." Minn. Stat. § 541.051, subd. 1(a). Section 541.051 thus imposes both a statute of limitations and a statute of repose on claims arising out of defective improvements to real property. The statute's limitations on such claims do not apply, however, "to the manufacturer . . . of any equipment or machinery installed upon real property." *Id.* § 541.051, subd. 1(e).

Here, Brasscraft invokes § 541.051's statute of repose. It is undisputed that the Thompsons' cause of action accrued more than ten years after the substantial completion of the construction of their house. Thus, if the statute of repose applies, the Thompsons' claims are barred. In determining whether the statute of repose applies, the Court must first examine whether Brasscraft's water supply line is an "improvement to real property." If it is, the Court must then consider whether the supply line qualifies as "equipment" excepted from the statute of repose under subdivision 1(e).

> **1.    The Water Supply Line Constitutes an "Improvement to Real Property."**

The Court finds that the water supply line is an "improvement to real property" under § 541.051. The Minnesota Supreme Court has defined an improvement to real property to mean "[1] a permanent addition to or betterment of real property that [2] enhances its capital value and that [3] involves the expenditure of labor or money and is [4] designed to make the property more useful or valuable as distinguished from ordinary repairs." *State Farm Fire & Cas. v. Aquila Inc.*, 718 N.W.2d 879, 884 (Minn. 2006)

4

(quotation omitted). Minnesota courts "use a common sense approach when determining whether something is an improvement to real property" under the statute. *Allianz Ins. Co. v. PM Servs. of Eden Prairie, Inc.*, 691 N.W.2d 79, 83 (Minn. Ct. App. 2005) (citation omitted). Brasscraft bears the burden of proving that the water supply line is an improvement to real property. *See State Farm Fire & Cas.*, 718 N.W.2d at 885.

On the undisputed facts in this record, the Court finds that the water supply line satisfies each of these four factors. First, the water supply line qualifies as a permanent addition to or betterment of real property. The Minnesota Court of Appeals has held that in order to satisfy this factor, an improvement "must be integral to and incorporated into the building or structure on the property." *Ritter v. Abbey-Etna Mach. Co.*, 483 N.W.2d 91, 93 (Minn. Ct. App. 1992). Courts have found products such as ventilation fans, garage door openers, smoke detectors, and light fixtures to be permanent additions to real property. *See Integrity Floorcovering, Inc. v. Broan-Nutone, LLC*, 521 F.3d 914, 918 (8th Cir. 2008) (bathroom ventilation fan); *Henry v. Raynor Mfg. Co.*, 753 F. Supp. 278, 281 (D. Minn. 1990) (garage door opener); *Patton v. Yarrington*, 472 N.W.2d 157, 160 (Minn. Ct. App. 1991) (hardwired smoke detectors); *Citizens Sec. Mut. Ins. Co. of Red Wing v. Gen. Elec. Corp.*, 394 N.W.2d 167, 170 (Minn. Ct. App. 1986) (light fixtures). The Thompsons argue that the foregoing cases are distinguishable because the water supply line could be easily removed, and its installation did not require Walt Thompson to make holes in any walls or "hardwire" the supply line into the plumbing system. The Thompsons analogize the supply line to a lightbulb, which—although an important part of any lighting system—is readily removable.

It is true that installing the water supply line took Thompson only five minutes, and that it could be easily removed. Nevertheless, the water supply line is an integral part of the bathroom's plumbing system. It connects the Thompsons' toilet to the building's water supply; without it, the toilet could not function. Further, it is undisputed that the water supply line is required by Minnesota's building codes. *Cf. Integrity Floorcovering, Inc.*, 521 F.3d at 918 (noting that bathroom ventilation fan was required by Minnesota's building codes). And, unlike a lightbulb, the water supply line is not designed to be periodically replaced—indeed, the supply line at the heart of this case lasted fifteen years. Because the supply line is an integral part of the bathroom's plumbing system which is not designed to be regularly replaced, the Court finds that it qualifies as a permanent addition to the property. *Cf. Associated Elec. & Gas Ins. Servs. v. BendTec, Inc.*, 822 F.3d 420, 424 (8th Cir. 2016) (holding that steam pipes connected to a steam turbine were an improvement to real property, where the pipes were "large integral components of" and "permanent additions to" the turbine installed at the property); *Citizens Sec. Mut. Ins. Co. of Red Wing v. Gen. Elec. Corp.*, 394 N.W.2d 167, 170 (Minn. Ct. App. 1986) (holding that light fixtures and ballasts were improvements to real property because they were a "substantial affixed part" of the electrical system).

The second factor is whether the alleged improvement enhances the capital value of the property. It is true, as the Thompsons argue, that the water supply line is cheap and easily installed, and a purchaser likely would not decline to buy a house merely because a supply line is absent. But it is indisputable that a house with a functioning toilet is more useful and valuable than a house without one. Applying the "common-sense" approach

6

required by Minnesota law, the Court finds that the water supply line satisfies this factor. Regardless, to the extent the supply line's effect on the property's capital value is negligible or non-existent, Minnesota courts have held that this factor is not an essential one. *E.g.*, *Nelson v. Short-Elliot-Hendrickson, Inc.*, 716 N.W.2d 394, 400 (Minn. Ct. App. 2006) ("Enhancement of monetary values, although a factor, is not essential.").

On the third factor, courts examine the labor and cost involved in installing the alleged improvement. It is undisputed that the water supply line was cheap, and its installation required very little effort from Walt Thompson. Thus, the supply line is clearly distinguishable from cases involving substantial improvements that required heavy machinery and significant expense to install. *See, e.g.*, *Associated Elec. & Gas Ins. Servs.*, 822 F.3d 420 (holding that large pipes connected to a steam turbine qualified as improvements to real property). But the Thompsons have not cited, and the Court has not found, any cases where a Minnesota court examined the degree of labor and cost required to install a product and concluded that the minor effort and expense involved prevented the product from being considered an improvement to real property. Applying a common-sense approach, the Court finds that the labor required to install the water supply line, coupled with its role as an integral component of the bathroom's plumbing system, supports the Court's finding that the supply line is an improvement to real property.[2]

---

[2] *Cf. Allianz Ins. Co.*, 691 N.W.2d at 84 ("To be sure, compared to total building cost and even the total plumbing system, the water-purification systems are minor. However, the water-purification systems were plumbed into and thus were integrated into the building's water system and made the building more useful because the water was

Finally, Minnesota case law references a fourth consideration, which the cases often analyze together with the other factors. Here, that consideration warrants a brief but separate discussion. An improvement to real property is a change to the property which is "designed to make the property more useful or valuable *as distinguished from ordinary repairs*." *State Farm Fire & Cas.*, 718 N.W.2d at 884 (emphasis added). Returning to the Thompsons' analogy between the water supply line and a lightbulb, replacing a lightbulb is a routine maintenance task, and one indistinguishable from an ordinary repair. By contrast, the water supply line is not designed to require regular replacement. And it is undisputed that Walt Thompson did not install it in the course of a repair to his bathroom, but as a necessary step in the bathroom's construction—a project designed to make the property more useful and valuable.

In sum, the water supply line is a permanent and integral component of a functional bathroom's plumbing system, is required by Minnesota's building codes, and its installation required some labor and contributed to the property's value. Applying the common-sense approach required by Minnesota case law, the Court finds that the water supply line qualifies as an "improvement to real property" under Minnesota Statutes § 541.051, subdivision 1(a).

---

purified. Even though the water-purification systems could be removed, they were attached to the building and there is no indication that Buffets planned to remove the systems.").

### 2. The Water Supply Line Is Not "Equipment."

The Court also finds that the water supply line is not "equipment" under § 541.051, subdivision 1(e). Subdivision 1(e)'s exception to the statute of repose provides that the statute of repose does not apply to "the manufacturer . . . of any equipment or machinery installed upon real property." Minn. Stat. § 541.051, subd. 1(e). Minnesota courts have read this exception narrowly, and have held that it applies "only in exceptional circumstances." *State Farm Fire & Cas. v. Aquila Inc.*, 718 N.W.2d 879, 886 (Minn. 2006) (quotation omitted). The Thompsons bear the burden of showing that the exception applies. *Id.*

The Minnesota Supreme Court interpreted the "equipment or machinery" exception for the first time in *Great Northern Insurance Co. v. Honeywell International, Inc.*, 911 N.W.2d 510 (Minn. 2018). There, the Court of Appeals had held that the exception is unambiguous, and interpreted the terms "equipment" and "machinery" according to their dictionary definitions. *See Great N. Ins. Co.*, 895 N.W.2d 255, 259 (Minn. Ct. App. 2017), *aff'd in part, rev'd in part*, 911 N.W.2d 510 (Minn. 2018) ("[T]he phrase 'equipment or machinery installed upon real property' . . . is unambiguous: 'equipment' refers to machinery or tools used in an operation or activity, or fixed assets other than land and buildings of a building enterprise. 'Machinery' refers to an assemblage of machines or mechanical apparatuses with separate functions used in the performance of work.").

Analyzing the statute, the Minnesota Supreme Court reasoned that the exception in subdivision 1(e) must be read together with subdivision 1(a), which provides a right of repose to persons furnishing "materials" for an improvement to real property. *Great N. Ins.*

9

*Co.*, 911 N.W.2d at 517. According to the court, the "equipment or machinery" exception refers to a subset of the "materials" covered in subdivision 1(a). *Id.* Whether a particular material is part of that subset "depends upon the specific nature and function of the material." *Id.* Applying these principles and the dictionary definitions of "machinery" and "machines," the court found that the improvement at issue fell within subdivision 1(e)'s exception. *Id.* at 517–18. But because it found that the improvement was "machinery," the court declined to examine the meaning of "equipment." *Id.* at 517.

In the course of its analysis, the court rejected prior cases from the Minnesota Court of Appeals and the federal courts which had focused on whether the defective material's integration into the building's structure rendered it more like "ordinary building materials" than "equipment or machinery." *Id.* at 518 ("We do not adopt this rule because the statute's plain language requires us to consider the material's nature and function, not its degree of integration into a structure. Tellingly, this integration rule was never rooted in the statute's plain language." (citation omitted)).

Although the *Great Northern* court expressly left the definition of "equipment" for another day, the Court predicts that the Minnesota Supreme Court would apply the dictionary definition of the term—as did the Court of Appeals in that case. Under that definition, "materials" used in the improvement of real property qualify as "equipment" if the materials constitute "machinery or tools used in an operation or activity, or fixed assets other than land and buildings of a building enterprise." *Great N. Ins. Co.*, 895 N.W.2d at 259. The Court must apply this definition narrowly "to ensure that the exception does not

10

swallow the general rule, leaving the term 'materials' in subdivision 1(a) meaningless." *Great N. Ins. Co.*, 911 N.W.2d at 517.

Analyzing the "specific nature and function" of the water supply line in light of this definition and the "common-sense" approach required by Minnesota case law, the Court finds that the supply line does not constitute "equipment." The supply line is merely a pipe connecting the Thompsons' toilet to a water supply. It is a core component of the toilet's plumbing system—it is neither a "machine" nor a "tool," and it has no independent operation or use apart from its role in the plumbing system. *Cf. Associated Elec. & Gas Ins. Servs. v. BendTec, Inc.*, 822 F.3d 420, 426 (8th Cir. 2016) (holding that pipes used to supply a turbine with steam were not "equipment," because "the stationary turbine piping" was "neither electrical nor electronic in nature with no function outside of being incorporated into the turbine"); *Red Wing Motel Invs. v. Red Wing Fire Dep't*, 552 N.W.2d 295, 297 (Minn. Ct. App. 1996) (holding that a fire-suppression system's pipes and sprinkler heads were not "equipment").[3] Therefore, subdivision 1(e)'s exception to the statute of repose does not apply.

---

[3] The Thompsons note that the *Red Wing* court stated, "Had the sprinkler heads themselves failed, their manufacturer might, however, fall within the subdivision [1(e)] exception." *Id.* at 297–98. The Thompsons also cite cases from other jurisdictions finding that sprinkler heads constitute "equipment" under other states' statutes of repose. *See Royal Indem. Co. v. Tyco Fire Prods., LP*, 704 S.E.2d 91 (Va. 2011); *Sears, Roebuck and Co. v. Tyco Fire Prods., LP*, 833 F. Supp. 2d 892 (N.D. Ill. 2011). Analogizing the water supply line to such sprinkler heads, the Thompsons argue that these cases support the conclusion that the supply line constitutes "equipment."

But the *Red Wing* court's comment that sprinkler heads *might* fall within the exception—which was contained in a parenthetical, and made without analysis—is dicta. Regardless, the water supply line—a flexible pipe that carries water from the water supply

\* \* \*

In sum, the Court finds that, on the undisputed record, the water supply line is an "improvement to real property" within the meaning of Minnesota Statutes § 541.051, subdivision 1(a), and that the supply line is not "equipment" under subdivision 1(e). Accordingly, the Thompsons' claims are barred by § 541.051's statute of repose.

## III.  CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 20] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 22, 2021                              s/Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge

---

to the toilet—is more analogous to the pipes that carry water to sprinkler heads. *Red Wing* held that such pipes do not constitute equipment, and this Court reaches the same conclusion with respect to the supply line.